Case number 22-3171, United States v. Gengaprasad. I would point out while I was standing up that from a prior life, that not only do they have a right to be here, they have a constitutional right to be here. We would be violating their constitutional rights if we kept them out. So you have a constitutional right to be here. The framers, welcome. Counsel. Good morning. May it please the court. My name is Gary Shore and I represent the appellant, Melissa Gengaprasad. The primary issue before you, your honors today, is whether the government proved that the false statement that the appellant made to agents, the false statement for which she was indicted, and not some unproved belief that she was the person that put the entire incident into motion, was material. And that false statement was that she was not an eyewitness to the shooting. So you are framing this as a sufficiency of the evidence challenge. Yes, your honor. Okay, yes. And there were two FBI agents who testified, in this case at least two, but who testified about how her false statements, which you don't contest were false statements for purposes of this appeal, affected or could have affected their investigation. For example, led them away from the possibility or diminished the possibility of timing the gun and so on. Given their testimony, which we've got to credit on appeal and certainly is testimony that Judge Kuntz credited, how can you prevail on a sufficiency challenge? Judge, I don't believe that the evidence supports those conclusions of the agents. And I think that the court cannot. No, no. So this is why I asked about sufficiency. They don't need to be further corroborated. Why isn't their testimony alone enough? Under the law, I believe the word material relates to the capability of influencing the decision making. And I believe that under all the facts, no matter what they said and the conclusions they reached, under all the facts, those facts do not support the fact that her misstatement that she didn't, that she was not an eyewitness was capable of influencing the decision making or that it distracted the investigators from their investigation. They had already had the shooter in custody. They knew who the shooter was. They knew, he had admitted that he was involved in the shooting in front of the house on Canorsi. The agent had already, the agent who was involved in the shooting had already provided a description of him, of his car, of the location, of exactly what had occurred. This interview of the defendant or the appellant was five and a half hours after the shooting. But they didn't know whether he was the only one involved. They knew he was a suspect because he showed up at the hospital injured, but they didn't have all the information. And they were looking for the weapon and they didn't know one who else was involved. They spent time doing search of a home when if she had been forthright and honest with them, they would have searched for the weapon elsewhere, which was never found, correct? Correct. And did the defendant in this case use the lack of a weapon in defense of his trial? I don't know. I wasn't present during that trial. One would assume, logically, that a defendant in a murder case would use the failure to locate the weapon as a potential defense. So how can you say that her lies to the law enforcement agents didn't affect their actions? The lie that she made to the law enforcement agents was that she was not an eyewitness. Whether or not the gun or where the gun was, didn't have, wasn't impacted by the fact that she was not an eyewitness to the shooting. But if she had told them not only was an eyewitness, I'm the one who called him to the scene, right? She comes out on her porch, she sees the FBI agent sitting in his car with a red shirt, assumes he's Bloods, calls her boyfriend, the defendant who shot the agent, to the scene. So if she had been up front with the officers, it's not just that she was an eyewitness, she was involved in the incident. Their investigation would have taken a different route. The fact that, well, this is what I would say, Judge. She wasn't tried for the fact that there is some claim that she was involved in the incident. But that doesn't matter. The point is, her involvement in this case was so significant and so direct that lying to the agents about not knowing anything about this shooting misdirected them and didn't give them the information they could have used in a real timely fashion to search for the weapon, for example, to make sure that they weren't searching for other potential people involved in the shooting. No? I mean, how? The victim, the agent who was shot, indicated that there was no other persons involved in the shooting. There was only the shooter that was in the vehicle at the time. So it seems to me that that's a false straw man to argue. So what the answer is, I think, in answer to a question on cross-examination is, so this is the agent, so had she described the events as they occurred, we would have sent agents to look for that firearm outside that apartment, which was at that point our primary lead. But they did. They also testified that they searched the area, they put cones out, they looked for forensic evidence outside the apartment. The logic of that argument just doesn't hold. And then there's the resources spent on obtaining a search warrant for the residence. But the search warrant, the request to search the residence was made before they even asked her any questions about whether she was an eyewitness or not. And she had every right to say, I don't consent to search. And then they went and got a search warrant. The search warrant asked for various items, not just a firearm. It asked for firearms in plural. It asked for proof with respect to the vehicle that was involved, the ownership of the vehicle, and also proof with respect to the ownership of the apartment. Those were the items that they were looking for in the search warrant. But they also conducted a search of the home and they wouldn't have spent time and resources doing that. They would have directed those resources to finding the vehicle and the weapon, perhaps somewhere along the route to the hospital. They had already, I believe, they had already found the vehicle in a shop several blocks away. I believe that they would have searched that- Had they found the vehicle at that time? Yes, within the five and a half hours. And they had video of him at that shop. So I think we've got your argument as to sufficiency of Wilmingham, which is the primary argument, as you point out, with respect to your argument relating to the procedural reasonableness of the sentence. Part of that argument relies on an argument, I guess, that the district court's determination was clearly erroneous as to precisely these issues that we're discussing, is that correct? Yes. So they're linked, closely linked in that way. And understand that you've got a substantive reasonableness argument. Correct. So we'll hear from the government, and you've reserved two minutes. Thanks so much. Thank you. Good morning, may it please the court. My name is Sarah Winnick, and I represent the appellee, the United States government, who I also represented at trial below. I want to start with the appellant's argument that Watson was not in custody at the time the appellant lied, and therefore her false statements couldn't be material. And as an initial matter, that is simply not true, and the record says otherwise. Multiple agents testified that at the time of the appellant's first false statement, which was around 9 p.m. in her kitchen, and that's when she said she didn't see anything. By the time she went outside, the police had already arrived and she didn't know about Watson's involvement in the shooting until an officer told her. Watson was not in custody at that time. I think you misspoke the first time, but okay. So Mr. Watson was not in custody at that point? Yes, your honor. Watson was not in custody at that time, and that's government appendix page 78. What the trial evidence actually showed was that after Agent Harper returned fire with his service weapon, Watson went to the hospital with a gunshot wound, and as is NYPD and hospital policy, the hospital called the police, and that's government appendix page 73. And the police put two and two together and assumed that Watson must be a suspect because Watson said, I was shot on Canarsie Road, that's where Agent Harper was shot, and the police assumed this is likely a suspect, and that's also government appendix page 73. But Watson was not arrested until later that night after the appellant's false statements. But even if Watson was in custody at that time the appellant made false statements, it wouldn't change the fact that her false statements are still material to the investigation. An investigation doesn't end when somebody's in custody. Because when you say material, that doesn't necessarily mean it caused anything. Material means it's capable of causing whatever effect you're talking about. Exactly, your honor. And so the trial evidence established two things. First, that of course a false statement that she didn't see anything is capable of impacting this investigation. As the agents testified, it's capable of impacting how they look for what the motive of the shooting is, how they look for co-conspirators, how they look for evidence. And so regardless of any of the facts that the agents testified specifically to how it impacted this investigation. It might have an effect I suppose on the sentence, but not on the content. It might, whether or not it had an actual impact on the actual world, might have I suppose an impact on the level of the sentence, but not on whether it was criminal. Your honor, I believe that it would impact, in terms of an investigation, it's both capable, of course common sense says lying about being an eyewitness is capable of impacting an investigation. But it also did in fact influence this investigation. My question is, and therefore what? I mean what do you, if you met the first part, what does the second part add to it unless it adds to the amount of the sentence? Your honor, I'm not sure I understand the question, are you? I'm not sure I do either. But. No, but you said that all it has to do is to be a, is to be able to have an impact. You don't, in order to prove the crime, you don't have to prove that it in fact had an impact. So what does it add to the case if we decide it did have an impact? I understand your question, your honor. I believe that it. None of us does. I believe that it does go to the nature and circumstances of the crime in this case, which of course is a proper sentencing consideration. So it's sentencing, that's what I'm asking. Yes, your honor. And here specifically, the defendant's false statements showed why she lied. As the evidence showed at trial, the appellant told the truth that Watson wasn't a gang, that Watson hustled on the street to make money, and that's government appendix page 246. But she lied about anything having to do with herself. She lied about what she saw. She obviously didn't tell the agents that she made the phone call, which brought Watson back to Canarsie Road. She lied about witnessing the attack. She lied about everything that had to do with her involvement. And it gives a sinister reason for her false statements, which is of course a sentencing factor that the court did and could properly consider. One other thing I just want to mention is that the appellant mentioned that when Agent Harper was shot, he said, the appellant said that Agent Harper said that nobody else was in the car. And that's simply not true and not supported by the record. What Agent Harper testified to was that he just saw the shooter, and he saw the shooter start to drive away, and then there was a fork in the road, and he didn't see what happened after. So it's not true that Agent Harper said there's only one person involved. In fact, during this time of the investigation, while the defendant shows up at a hospital injured, and they're trying to figure out if he's involved, they believe that there may have been other people involved in the shooting, correct? I mean, they're not sure if it's just this one person who shows up at the hospital injured, correct? Correct, Your Honor, and in fact, they're worried that this was a targeted attack on an FBI agent. They didn't know if other agents were in greater danger. They didn't know the motive of the shooting. Had they known that the appellant actually called her boyfriend because she saw someone wearing a red sweatshirt who she assumed was a blood, and her boyfriend is a crip, they would have known that this is not a big attack on law enforcement. They would have known that it was a targeted, specific attack, and that absolutely affected how they went about the investigation and distracted them. And do we, just help me out with this, when we consider the materiality of a false statement, do we consider it at the time that it's made, or, I mean, there's some testimony about evidence would have needed to be obtained in connection with the prosecution, for example. So is it a counterfactual situation where we look back and say, if she had not disclosed the information, they had not found this out, not had the video, that would have impaired the government's ability to prosecute, and to try the case. Is that the way to look at it as well? Yes, your honor, I believe we should look at it at the moment that she made the false statement, and its impact on the investigation at that moment. But again, the standard is capable. So I do think we can look at what could this false statement have done. All the way down the line from that moment, in terms of their investigation, right after the shooting of the FBI agent, Agent Harper, all the way through prosecution. I believe so, your honor, because the question is not, was the FBI agent so good at their job that they were able to overcome the false statement? It's what could the false statement have done? Is it capable of influencing or distracting? Does she have to know that at the time? It's something she has to know it was capable of, or is that something we can judge by itself? Your honor, I don't believe she has to, I don't believe the standard requires her to know that it's capable of influencing. But in this case specifically, and the trial evidence, it showed that of course she knew it was capable of, her false statements were capable of influencing the investigation. And that's because- I would just find it a little odd not to require, in a criminal case, to require that the alleged criminal was aware that it was criminal because she was aware that it might influence somebody. Well, regardless, in this case, she absolutely was aware that her false statements about being an eyewitness were capable of influencing the investigation. And that's because the evidence showed that after her false statements approximately, it was around 6 p.m. that night, she went to the video surveillance in her apartment building and made a video on her iPhone of surveillance video showing the shooting. And that's long hours before the FBI- I understand that, I'm just wondering if we're deciding in the case whether we have, it may be an easy issue, but whether we have to decide her state of mind and the time she made the statement. I don't believe the test requires the court to find that she knew it could influence because the materiality standard is it capable of influencing. Not a subjective belief of the appellate. And maybe another way of putting it is, and I should know this, someone who stood in your shoes on 1001 charges, is there a willfulness element? That is, when you're answering questions from an FBI agent or a federal agent, do you have to, in addition to knowing you're lying, willfully know that you're doing something that's criminal, generally speaking? I believe you have to intend to do it. You have to intend to lie. You can't just misspeak. And that's enough. I believe that's enough. And there's certainly a difference between lying about saying the shooter was five feet 10 as opposed to five feet 11. Of course, that's not material. So all you need to know is, as a matter of state of mind, is that it's a federal agent, correct? Or do you not need to know that? Well, here she was given a 1001 warning that it is a crime to lie. So you need to know that. I feel like you would need to know that. And you need to know that the statement you are providing to that agent or those agents is false. And that's it. Yes, Your Honor. Unless the panel has any more questions, I can rest. Thank you very much. We'll hear from counsel for the appellate. Just briefly, judges. I would ask the court to consider whether this type of statement, this I don't want to get involved statement, forgetting about anything else, because the only statement that she was tried was that she stated she was not a witness when in fact she was a witness. This type of I don't want to get involved statement is, I submit- No, no, no, no, no. So two very different statements. I don't want to get involved is an aspirational statement and not a fact statement. I am not a witness is a factual statement made to a federal agent. So I think what's before us is the factual statement. I didn't see anything. Well, I submit to Your Honor that the statement of a witness that I didn't see anything is in fact an I don't want to get involved statement. And that is not the type of statement that the statute is intended to address. And I would ask you to consider that as well. Thank you so much. We'll reserve the decision.